Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Lorraine De La Cruz*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Lorraine De La Cruz,<br><br>             Plaintiff,<br><br>     v.<br><br>Connecticut General Life Insurance Company, Federated Department Stores, Inc., Executive Group Long Term Disability Plan,<br><br>             Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Lorraine De La Cruz (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1.      Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.      Plaintiff is a resident of Maricopa County, Arizona.

3.      Upon information and belief, Defendant Federated Department Stores, Inc. (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group disability insurance policy which was fully insured and administered by Connecticut General Life Insurance Company (hereinafter referred to as "Connecticut General"). The specific Connecticut General policy is known as group policy GLT 675833. The Company's purpose in purchasing the Connecticut General policy was to provide disability insurance for its employees. Upon information and belief, the Connecticut General policy may have been included in and part of the Executive Group Long Term Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4.      Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to Connecticut General. Plaintiff believes that as it relates to her claim, Connecticut General functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

5.      Upon information and belief, Plaintiff believes Connecticut General operated under a conflict of interest in evaluating her claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* Connecticut General's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.

6.     The Company, Plan and Connecticut General conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### Venue

7.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### Nature of the Complaint

8.     Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled.

9.     After working for the Company as a loyal employee for approximately seven (7) years, Plaintiff became disabled due to serious medical conditions and was unable to work in her designated occupation as a Store Manager on or about May 17, 2003. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10.     Plaintiff applied for long term disability benefits under the relevant Connecticut General policy, which were approved as of September 17, 2003.

11.     The relevant long term disability policy provides the following definition of a covered disability which applies to Plaintiff's claim:

Total Disability or Totally Disabled (For Long Term Disability Insurance)

You will be considered Totally Disabled only if, because of Injury or Sickness, you are unable to perform all the essential duties of your occupation and you are under the care of a licensed Physician.

12.     In a letter dated March 18, 2005, Connecticut General incorrectly notified Plaintiff it was required to undertake an "any occupation" investigation of her claim as required by the terms of the relevant policy.  As set out hereinabove and incorporated herein by reference, the definition of disability under the relevant policy does not contain an "any occupation" provision.

13.     As part of its "any occupation" evaluation of Plaintiff's claim, in June 2005, Connecticut General requested one of Plaintiff's treating physicians to answer questions regarding her continued disability.  The physician did so and concluded, "it would be unrealistic to expect [Plaintiff] to return to a full time job."  The physician also submitted a May 5, 2005 Physical Abilities Assessment form which was provided by Connecticut General and opined Plaintiff was "incapacitated."

14.     In a letter dated July 28, 2005, Connecticut General notified Plaintiff that based on her restrictions and limitations it had found her "unable to perform all the essential duties of any occupation for which [she]…may reasonably become qualified based on education, training and experience."

15.     As Connecticut General continued to find her totally disabled under the more stringent "any occupation" standard, Plaintiff did not notify Connecticut General it had applied the wrong definition of total disability in its review of whether she continued to be entitled to long term disability benefits.

16.     Plaintiff also applied for social security benefits through the Social Security Administration (SSA).  In a letter dated August 6, 2005, SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national

economy as of December 27, 2002.  In determining Plaintiff was disabled and entitled to social security benefits, an Administrative Law Judge specifically found, *inter alia*, "medical evidence establishes" Plaintiff's "'severe impairment" and she is "unable to perform the requirements of her past relevant work."

17.     SSA's definition of disability is more stringent than the aforementioned definition of disability set for the in the relevant Connecticut General policy and substantially similar to the aforementioned "any occupation" definition of disability applied to Plaintiff's claim by Connecticut General.  Therefore, SSA's approval and continued payment of disability benefits through the date of this Complaint as well as the fact Connecticut General reaped the fruits of the SSA approval by reducing what it owed Plaintiff each month by the amount she received from SSA is relevant evidence for this Court to consider with regard to the lawfulness of Connecticut General's decision to deny Plaintiff benefits.

18.     As part of its ongoing evaluation of Plaintiff's claim, one of Plaintiff's treating physicians provided Connecticut General with a November 7, 2008 assessment of Plaintiff's ability to work wherein they concluded Plaintiff was "not able to engage in work."

19.     Upon information and belief, as part of its ongoing evaluation of Plaintiff's serious medical conditions, Connecticut General retained an investigator to conduct surveillance of Plaintiff's activities on January 22-25, 2009.  The surveillance video depicts Plaintiff engaging in simple activities of daily living and does not offer any evidence to suggest she would be able to engage in any gainful employment.

20.     In response to a request by Connecticut General, one of Plaintiff's treating physicians reviewed the surveillance video and responded to questions posed by Connecticut General regarding Plaintiff's abilities.  Specifically, this physician found the

surveillance was reasonably consist with his expectations of Plaintiff and did not indicate that she was capable of working in a full time position an d also noted Plaintiff was not malingering.

21.     Connecticut General notified Plaintiff in a letter dated May 14, 2009, she no longer met the relevant definition of disability and was only entitled to benefits through May 16, 2009.  Connecticut General terminated Plaintiff's benefits without any evidence her medical condition had improved or that she was able to engage in her own occupation given her restrictive work abilities after erroneously concluding she failed to provide sufficient evidence to support the continued severity of her serious medical conditions and relying on a statement from one of Plaintiff's treating physicians that her serious medical conditions "were stable"  and the video surveillance which merely depicted Plaintiff participating in daily living activities but did not equate to functioning in an eight (8) hour work day.

22.     Connecticut General's May 14, 2009 denial letter confirms it failed to provide a full and fair review pursuant to ERISA because it completely failed to reference, consider, and/or selectively reviewed and de-emphasized most, if not all of Plaintiff's evidence. Connecticut General's determination was also erroneous and unlawful because Plaintiff's medical condition had not improved in any meaningful way which would have allowed a return to work [1] from the time it originally evaluated and approved her long term disability

---

[1] *McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586 (8th Cir. 2002) (holding once the claimant establishes an entitlement to benefits, absent changed circumstances, the propriety of a termination is questionable); *see also*, *Regula v. Delta Family-Care Disability Survivorship Plan,* 266 F.3d 1130 (9th Cir. 2001); *Walke v. Group Long Term Disability Ins.,* 256 F.3d 835 (8th Cir. 2001); and *Levinson v. Reliance Standard,* 245 F.3d 1321 (11th Cir. 2001) (placing burden on insurer to establish claimant's ability to work).

claim; *to wit*, Plaintiff remained unable to engage in her own occupation and as SSA found, any occupation.

23.     In denying Plaintiff's long term disability claim on May 14, 2009, Connecticut General relied upon its own Nurse Case Manager and Associate Medical Director.   Plaintiff questions the credentials, independence, impartiality and bias of Connecticut General's own employees in reviewing her claim.   Plaintiff believes the opinions of Connecticut General's Nurse Case Manager and Associate Medical Director are adversarial to her claim due to Connecticut General's conflict of interest in that its own employees evaluated her claim as well as the fact these individuals may not have had appropriate medical training or medical expertise to fairly evaluate Plaintiff's claim. Plaintiff believes Connecticut General's financial conflict of interest was a motivating factor in why it referred her claim to its own employees for evaluation.

24.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the May 14, 2009 denial of her claim for long term disability benefits in a letter dated October 29, 2009.  In support of her appeal, Plaintiff submitted additional medical information and lay witness affidavits which demonstrated she was unable to engage in any occupation as set forth in the relevant Connecticut General long term disability policy.

25.     On appeal, Plaintiff submitted an a report from an August 7, 2009 Functional Capacity Evaluation which was prepared by a qualified physical therapist who determined Plaintiff "is unable to perform any categorical work at this time, even ***sedentary***" "on a regular full-time basis" (original emphasis).  Plaintiff also submitted a September 14, 2009 narrative letter from one of her treating physicians who explained, "there are no specific tests that diagnose" Plaintiff's serious medical condition and concluded she is  "unlikely to return to the work force in any form."  The physician also agreed with the findings of the Functional Capacity Evaluation.  Plaintiff also submitted a September 29, 2009 Vocational

Report prepared by a qualified vocational/rehabilitation/labor market consultant, who concluded she is "not able to work in any capacity in the competitive labor market."

26.     In further support of her appeal, Plaintiff submitted to Connecticut General a sworn affidavit from a relative who confirmed Plaintiff "is unable to work on either a full-time or part-time basis" and an affidavit from a former co-worker and friend who offered similar opinions.

27.     As part of its review, Connecticut General referred Plaintiff's claim, upon information and belief to Mark Burns, M.D., who was retained to allegedly provide a medical records only review of Plaintiff's claim.

28.     Upon information and belief, based on a cursory review of the LEXIS legal database, [2] Plaintiff believes Dr. Burns may be a long time consultant for the disability insurance industry, including companies such as Connecticut General and therefore, she believes Dr. Burns' review of her claim is a conflict of interest and a reason her claim was denied and she did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1.

29.     Plaintiff has not been provided with a copy of Dr. Burns' peer review report, but Connecticut General's subsequent January 11, 2010 denial, discussed herein below and incorporated by reference, states Dr. Burns found Plaintiff has "no basis for impairment." Dr. Burns' review of Plaintiff's medical records was flawed because, upon information and belief, it was selective and de-emphasized evidence Plaintiff submitted which proved she was disabled in order to provide a reason for Connecticut General to justify a denial of her claim.

---

[2] *See Santos v. Quebecor World Long Term Disability Plan*, 254 F.R.D. 643 (E.D. Cal. 2009); *App v. Aetna Life Ins. Co.*, 2009 U.S. Dist. LEXIS 70309 (M.D. Penn. 2009); and *Forrester v. Metro Life Ins. Co.*, 2005 U.S. Dist. LEXIS 32984 (D. Kan. 2005).

30.     Upon information and belief, Plaintiff believes Dr. Burns may have an incentive to protect his own consulting relationship(s) with the disability insurance industry by providing medical review reports which selectively review and ignore evidence as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies such as Connecticut General and which support the denial of Plaintiff's claim.  Plaintiff believes Dr. Burns' review of her claim presents a conflict of interest and is a reason her claim was denied and she did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1.

31.     In response to questions posed by Dr. Burns, Plaintiff's treating physician submitted a December 28, 2009 narrative letter, pointing out the relevant available "medical literature" addressing Plaintiff's serious medical conditions and stated the impairment cannot be "measured by any objective parameter."  The physician addressed the indirect measurements demonstrating Plaintiff is unable to work and referenced his opinion the medical literature demonstrated "slim" odds Plaintiff would ever be able to work again.

32.     In a letter dated January 11, 2010, without any evidence Plaintiff's medical condition had improved or that she was able to engage in her own occupation given her restrictive work abilities and relying extensively on the video surveillance and Dr. Burns' opinions, Connecticut General notified Plaintiff it was upholding the denial of her claim for long term disability benefits after erroneously finding Plaintiff failed to demonstrate she was disabled as defined by the policy.  Connecticut General's denial again failed to provide Plaintiff with a full and fair review after failing to properly investigate her claim in violation of ERISA, specifically 29 C.F.R. § 2560.503-1(h), by again completely failing to reference, consider and/or selectively reviewing most if not all of her evidence which adequately documented the fact Plaintiff's medical conditions had not improved and she continued to meet the definition of disability.

33.     Connecticut General denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability, disregarding Plaintiff's self-reported symptoms, failing to consider all the limitations set forth in her medical evidence, failing to obtain a peer review evaluation from a disinterested, qualified physician, ignoring the objective results of the Functional Capacity Evaluation Plaintiff underwent that provided objective measurement of her functional impairment and instead finding her claim was not properly documented when the relevant medical literature provides no such findings are yet available for her serious medical conditions, failing to evaluate the combination of all of Plaintiff's serious medical conditions and failing to request for Plaintiff to undergo an independent medical examination as allowed in the policy.

34.     Connecticut General has notified Plaintiff she has exhausted her administrative appeals.

35.     In evaluating Plaintiff's claim on appeal, Connecticut General had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [3]

36.     Plaintiff believes the reason Connecticut General provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest and this conflict is a reason her disability claim was denied.

37.     Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Connecticut General and any individual, including Dr. Burns and its own

---

[3] *See* Footnote 5, *supra*.

1   employees, who reviewed her claim and the Court may properly weigh and consider

2   evidence regarding the nature, extent and effect of *any* conflict of interest which may have

3   impacted or influenced Connecticut General's decision to deny her claim.

4        38.    With regard to whether Plaintiff meets the definition of disability set forth in

5   the policy, the Court should review the evidence in Plaintiff's claim *de novo* because the

6   unlawful violations of ERISA committed by Connecticut General as referenced herein are

7   flagrant.

8        39.    As a direct result of Connecticut General's decision to deny Plaintiff's

9   disability claim she has been injured and suffered damages in the form of lost disability

10   benefits in addition to other potential employee benefits she may have been entitled to

11   receive through or from the Plan and/or Company as a result of being found disabled.

12        40.    Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits,

13   prejudgment interest, reasonable attorney's fees and costs from Defendants.

14        41.    Plaintiff is entitled to prejudgment interest at the rate of 10% per annum

15   pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for

16   losses she incurred as a result of Defendants' nonpayment of benefits.

17        WHEREFORE, Plaintiff prays for judgment as follows:

18        A.    For an Order requiring Defendants to pay Plaintiff disability benefits as a

19   result of being found disabled pursuant to any definition of disability in the relevant

20   policy from the date she was first denied these benefits through the date of judgment and

21   prejudgment interest thereon as well as any other employee benefits she may be entitled

22   to from the Plan and/or Company as a result of being found disabled;

23        B.    For an Order directing Defendants to continue paying Plaintiff the

24   aforementioned benefits until such time as she meets the Plan or policy conditions for

25   termination of benefits;

26

C.      For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.      For such other and further relief as the Court deems just and proper.

DATED this 15th day of March, 2010.

SCOTT E. DAVIS. P.C.


By:   */s/ Scott E. Davis*
          Scott E. Davis
          Attorney for Plaintiff